# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 10-CV-1050 (JFB) (ETB)

————————————

La Piel, Inc. doing business as Knoles & Carter,

Plaintiff,

versus

Richina Leather Industrial Co. Ltd. also known as Shanghai Richina Leather Co. Ltd. also known as SRL-Shanghai Richina Leather Co. Ltd. & SRL Trading Ltd.,

Defendants.

————————————

**MEMORANDUM AND ORDER**
March 29, 2013

————————————

Joseph F. Bianco, District Judge:

La Piel, Inc. ("plaintiff" or "La Piel"), doing business as Knoles & Carter, brought this action against Richina Leather Industrial Co. Ltd. ("Richina"), also known as Shanghai Richina Leather Co. Ltd. and SRL-Shanghai Richina Leather Co. Ltd, and SRL Trading Limited ("SRL"), also known as SRL Trading Ltd. (collectively, "defendants") alleging causes of action for breach of contract, promissory estoppel, and fraud.

The claims in this lawsuit relate to defendants' sale of leather to plaintiff. Specifically, plaintiff claims that defendants breached contracts governing their sale of leather to plaintiff by (1) sending leather that did not match the samples sent to New York on prior occasions (in breach of the quality term), (2) failing to deliver the leather on time (in breach of the delivery term), and (3) failing to give plaintiff the line of credit promised (in breach of the credit term). Plaintiff also claims that defendants engaged in fraudulent practices to compel plaintiff to renegotiate its initial agreement on terms more favorable to defendants.

Presently before this Court is a motion for summary judgment made by defendants to dismiss plaintiff's amended complaint in its entirety, as well as a cross-motion for summary judgment made by plaintiff to dismiss defendants' affirmative defense of lack of personal jurisdiction. For the reasons set forth in detail below, the Court grants defendants' motion for summary judgment with respect to the personal jurisdiction issue, and therefore denies plaintiff's cross-motion for summary judgment in its

entirety. The undisputed evidence demonstrates that there is no basis for jurisdiction over the defendants pursuant to either N.Y. C.P.L.R. § 301 or § 302. Accordingly, plaintiff's amended complaint is dismissed for lack of personal jurisdiction, and the Court need not reach the merits of plaintiff's claims.

Also before this Court is a motion for expenses (including attorney's fees) made by defendants pursuant to Federal Rule of Civil Procedure 37(a)(5). As set forth below, because plaintiff's discovery-related activity at issue with respect to its motion to compel (although rejected by the Court under the particular circumstances of this case) was substantially justified, as that term is defined in Supreme Court and Second Circuit jurisprudence, the Court declines, in its discretion, to award expenses to defendants, as against either or both plaintiff and its counsel.[1]

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it.[2]

### 1. The Parties

#### a. Plaintiff

Plaintiff is a New York corporation with its principal office located in Garden City, New York. (Am. Compl. ¶ 2.) Plaintiff's business is the import and sale of leather goods. (*Id.*)

#### b. Defendants

Richina is a company organized and existing under the laws of the People's Republic of China and SRL is a company organized and existing under the laws of Hong Kong. (Answer to Am. Compl. ¶ 3.) Both companies engage in the business of producing leather.

Robert Moore ("Moore") has been the President and CEO of Richina since March 2009. (Defs.' 56.1 ¶ 10.) Moore and his management team operate Richina. (*Id.* ¶ 11.) Moore splits his time between Massachusetts and Shanghai (*id.* ¶ 12), and on occasion travels to New York (mostly to attend trade shows and view fashion trends) (Pl.'s 56.1 ¶ 11). When asked, at his deposition, how many times he traveled to New York in the past year, Moore responded that it was no more than ten times. (Sultan Aff. in Supp. of Pl.'s Cross Mot. for Summ. J. ("Sultan Aff.") Exs., at 190[3]; *see also* Defs.' 56.1 ¶ 17 (explaining

---

[1] As discussed *infra*, in connection with that motion, the Court also concludes that the re-serving of a subpoena by plaintiff's counsel, and the resulting need for defendants' counsel to obtain clarification from Magistrate Boyle about his prior ruling, does not warrant the imposition of expenses on plaintiff or plaintiff's counsel under the Rule.

[2] Although the parties' Rule 56.1 statements contain specific citations to the record, the Court cites to the Rule 56.1 statements, rather than to the underlying citations.

[3] Because plaintiff did not separate his exhibits by number or letter, the Court refers to them by page number assigned to the PDF document of all exhibits submitted in connection with plaintiff's opposition and moving motion.

that Moore visited New York on behalf of Richina once in 2009 and once in 2010, prior to the filing of this lawsuit).)

Defendants predominantly ship leather to factories in Asia. (Defs.' 56.1 ¶ 8.) Those factories then use the leather to create various types of leather goods. (*Id.*) Defendants do limited business with companies that have operations in New York – it accounts for less than 5% of defendants' total revenues per year from 2008 through 2010 (to be clear, that is revenue from leather that is first sent to factories in Asia that then create products which are sent to customers in New York). (*Id.* ¶ 14; *see also* Defs.' Resp. to Pl.'s 56.1 ¶ 3.)[4] In 2010, defendants' total revenues were $57,300,000, $2,100,000 of which was from leather specified or ordered by customers that operate in New York. Thus, only 3.6% of defendants' total revenues in 2010 were generated from New York customers. (Defs.' 56.1 ¶ 14.) However, defendants do not, and have never, sent production leather into New York. (Defs.' Resp. to Pl.'s 56.1 ¶ 3.) On occasion, defendants ship some leather samples to the United States, including New York. (Defs.' 56.1 ¶ 8; *see also* Moore Decl. ¶ 8 ("Indeed, the only items I am aware of that have ever been sent to New York are small samples

(with values under $200) on some occasions.").)[5]

Defendants have never been licensed to do business in New York, have never designated agents for service of process in New York, and have never paid taxes in New York. (Defs.' 56.1 ¶ 7.) Defendants similarly have no offices, bank accounts, telephone listings, or mailing addresses in New York. (*Id.*) Moreover, defendants have never owned real estate, assets, or personal property in New York. (*Id.*)

### 2. Defendants' Parent Company and its Management

Richina Pacific Limited ("Richina Pacific") is the parent company of a group of over fifty companies located primarily in China, New Zealand, and Malaysia (McDonald Aff. Ex. A, Walker Aff. ¶ 4), two of which are defendants (Defs.' 56.1 ¶ 1). The group of companies in China that engage in various leather tanning and other manufacturing activities is sometimes referred to as "Richina Industries," which is not a legal entity of any kind. (Walker Aff. ¶ 4.) According to defendants, they are "managed" and "operate" independent of Richina Pacific, "other than general parent/subsidiary oversight." (Defs.' 56.1 ¶ 11.) Plaintiff claims that "there is a question of fact as to whether Defendants operated independently of its parent" (Pl.'s 56.1 ¶ 1k), but does not point to any evidence tending to prove that the parent company or

---

[4] Although plaintiff contends that there is a genuine issue of fact as to whether defendants' revenues for 2008 to 2010 from companies that do business with other companies in New York exceeded 5% of their total revenue (*see* Pl.'s 56.1 ¶ 1(n)(ii)), the evidence plaintiff cites to does not put this fact into dispute (*see* K. Ann McDonald Aff. in Supp. of Defs.' Mot. for Summ. J. ("McDonald Aff.") Ex. M, Moore Decl. ¶ 9 (explaining that the percentage was 3.6% in 2010); June 23, 2010 Announcement (announcing discontinuation of ovine division in 2010)). Because plaintiff has not pointed to any relevant evidence that controverts defendants' figures, the Court deems defendants' less than 5% figure undisputed for purposes of these motions.

[5] Plaintiff argues that there is a genuine issue of fact as to the amount of samples that defendants send to New York. (Pl.'s 56.1 ¶ 1(h).) However, plaintiff merely cites to evidence of the fact that samples were sent to the United States in general, or to New York specifically, but does not point to any evidence tending to show that this activity was conducted on more than a *de minimis* basis. Regardless, the quantity of samples sent to New York does not affect the Court's analysis conducted *infra*.

any of its Board members exerted any modicum of control over defendants atypical to that of a normal parent/subsidiary relationship.

John L. Walker ("Walker") is the Chairman of the Board of Richina Pacific. (Defs.' 56.1 ¶ 1.) He is a retired corporate partner of Simpson Thacher & Bartlett LLP and resides in New York. (Walker Aff. ¶ 1.) As Chairman, Walker attends and participates in Board meetings of the parent company, and is involved in "the usual general oversight that a parent's Board engages in with respect to group subsidiaries." (*Id.* ¶ 11; *see also id.* ¶ 13 (explaining that, as Chairman, his "activities are those that are typical of such a non-management position").) Walker does not, however, participate in Board meetings of either defendant (Defs.' 56.1 ¶ 6)[6], nor does he manage defendants' business from his office in New York (Defs.' Resp. to Pl.'s 56.1 ¶ 21).[7] Walker is not, and has never been, an explicit employee, officer, or director of either of the defendants (the defendants are simply subsidiaries of the larger parent company of which he is

---

[6] To the extent plaintiff disputes this fact, it does so without pointing to any evidence in the record to the contrary. Plaintiff cites to deposition testimony and portions of Walker's affidavit, amongst other things, that do not controvert the fact that Walker does not participate in Board meetings for either defendant. Accordingly, the Court deems this fact to be undisputed for purposes of these motions.

[7] Plaintiff states, in a conclusory fashion, that "[d]irectly or indirectly, Walker manages Defendants' business from the office." (Pl.'s 56.1 ¶ 25.) However, plaintiff does not cite to, nor could it cite to, evidence in the record to support this speculative claim. Although there is evidence that representatives of defendants have, on occasion, been to the offices of Richina LLC (not a defendant) in New York, there is simply no evidence in the record to support plaintiff's unsubstantiated theory that Walker must have therefore managed defendants' business.

Chairman of the Board). (Defs.' 56.1 ¶ 2.) At his deposition, Moore testified that Walker is "not involved in any of the day-to-day strategies and tactics that [the management of Richina] would, as a subsidiary of Richina [Pacific] be involved in." (McDonald Add. Ex. B, Moore Dep. at 157.) Neither of the defendants own real estate in China or elsewhere. (Defs.' 56.1 ¶ 3.)[8] Walker, therefore, does not manage any real estate interests for the defendants. (*Id.* ¶ 4; *see also* Walker Aff. ¶ 9 ("Thus, since the Defendants own no real estate, I cannot, and do not, manage any real estate interests for the Defendants.").) Indeed, Walker has nothing to do with managing any of the Chinese real estate currently owned by any entity of Richina Pacific. (Walker Aff. ¶ 10.)

Richard Yan ("Yan") is a principal shareholder and CEO of Richina Pacific. He is also a director and officer of Richina. (Defs.' 56.1 ¶ 13.) Moore testified that Yan

---

[8] Plaintiff disputes this fact, pointing to a portion of Walker's affidavit where he indicates that Richina purchased a company called Shanghai Leather Co. ("SLC") that owns the real estate on which Richina's leather tanning operations are now located (seemingly to imply that because Richina purchased the company that owned that land, it might in fact have a real estate interest in that that land now). (*See* Pl.'s 56.1 ¶ 1(c) (citing Walker Aff. ¶ 5).) However, plaintiff fails to acknowledge the next paragraph of Walker's affidavit, where he states that "[a]t all times since [Richina] purchased SLC and [a subsidiary of SLC], SLC and/or its subsidiaries – not the Defendants – have continued to own the real estate on which all of the Richina group's Chinese manufacturing operations are located, including the land on which Defendant Richina Leather's tannery is located (Walker Aff. ¶ 6; *see also id.* ¶ 10 ("To summarize, the Defendants own no real estate in China and never have; the real estate in China is owned by SLC and/or its subsidiaries – none of which is a Defendant herein . . . .")), or point to any other evidence in the record tending to prove that defendants own real estate. Accordingly, the Court deems the fact that defendants own no real estate in China or elsewhere undisputed.

travels to New York approximately three to four times a year, and that he suspects that Yan would meet with Walker while in the state. (Sultan Aff. Exs., at 202-03.) Wallace Mathai-Davis is a member of the Board of Richina Pacific. (Defs.' 56.1 ¶ 13.) On at least two occasions, meetings of the Richina Pacific Board were held in New York. (Defs.' Resp. to Pl.'s 56.1 ¶ 11.) Moore, as the CEO of a subsidiary of the parent, attended these meetings. (*Id.*)

### 3. Business Dealings Between the Parties

As early as 2003, plaintiff and defendants were in talks about doing business. These talks occurred predominantly overseas, but also, on occasion, in New York. (*See* Pl.'s 56.1 ¶¶ 4-5.) Plaintiff and defendants had a business relationship from 2003 or 2004 through 2009. (*See* Defs.' Resp. to Pl.'s 56.1 ¶ 4.) Defendants sent samples to plaintiff and, on occasion, plaintiff paid for those samples. (*See* Pl.'s 56.1 ¶ 12.) In terms of non-samples, plaintiff directed defendants to ship the leather it desired to a factory in Tianjin, China. (Defs.' 56.1 ¶ 9.) Thus, defendants manufactured and shipped leather to plaintiff in China, even though plaintiff did business in the United States. (*See* McDonald Aff. ¶ 7.)

The parties are in dispute as to what agreements, if any, were made: plaintiff contends that the parties entered into "oral agreements or agreements implied in fact from the conduct of the parties" (Sultan Aff. ¶ 3), whereas defendants claim that every contract between the parties was a written one (Defs.' Resp. to Pl.'s 56.1 ¶ 1; *see also* McDonald Aff. Ex. E, Written Contract and Purchase Order between plaintiff and SRL). Plaintiff maintains that the "credit terms and grade of leather were agreed to in Shanghai

in 2004" and "[i]t was understood by the parties that those terms wouldn't change from year to year," but that "the amount of leather that would be shipped each month, and the price per square foot" were negotiated on an annual basis, and decided by oral agreement, between the parties. (McDonald Aff. Ex. J., Pl.'s Resp. to Interogs. ¶ 2.) Accordingly, plaintiff claims that some of the "oral agreements" were entered into in New York, and that at least a portion of the negotiations for each contract occurred in New York. (Sultan Aff. ¶ 3; *see also id.* ¶ 4 (list of alleged oral agreements and where they were negotiated and executed).) Defendants, on the other hand, contend that all written contracts – the only kinds of contracts that the parties ever entered into – were always issued from China. (Defs.' Resp. to Pl.'s 56.1 ¶ 1.)

On February 5, 2010, defendants sent plaintiff a demand letter for $109,714, regarding a bill for deliveries in 2009. (McDonald Aff. Ex. D, Feb. 18, 2010 Demand Letter at 2.) Defendants were awarded a Chinese judgment for $109,714 plus interest. (*Id.* Ex. D, Translation of Chinese Judgment Sept. 2, 2011 at 3-8.)

Plaintiff subsequently brought this action alleging, *inter alia*, that defendants breached contracts between the parties. However, plaintiff has failed to indicate which contracts or contract provisions it believes defendants have breached. (*See* McDonald Aff. ¶ 7 (explaining that plaintiff has failed to identify by contract number, invoice number, or production number which of the many shipments of leather it alleges did not conform to the contracts between the parties).)

5

### B. Procedural History

Plaintiff filed the initial complaint in this action on March 9, 2010. On July 7, 2010, plaintiff filed an amended complaint. Defendants filed an answer to the amended complaint on July 30, 2010.

On August 26, 2010, plaintiff filed a motion for a preliminary injunction staying an action commenced by defendants in Tianjin, China and any other actions by defendants against plaintiff in China pending the resolution of this matter. Defendants filed an opposition to plaintiff's motion for a preliminary injunction on October 5, 2010, and plaintiff filed a reply in further support of its motion on October 18, 2010. On October 21, 2010, defendants requested leave to file a sur-reply, which the Court granted by Order dated October 25, 2010. On November 4, 2010, plaintiff filed a motion for a temporary restraining order, which the Court denied by Order that same day. Oral argument was held on plaintiff's preliminary injunction motion on November 30, 2010. The Court denied plaintiff's motion orally at that time. On January 10, 2011, the Court ordered that the case be referred to Magistrate Judge Boyle for the timing and scope of discovery. The case proceeded to discovery for the purposes of establishing personal jurisdiction over defendants under the direction of Magistrate Judge Boyle.

On March 27, 2012, defendants filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56 and 12(i) for lack of personal jurisdiction and, in the alternative, to dismiss plaintiff's amended complaint, pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, pursuant to Federal Rule of Civil Procedure 56. Defendants also filed a motion for attorney's fees, pursuant to Federal Rule of

Civil Procedure 37(a)(5), that same day. On May 15, 2012, plaintiff filed the following: (1) an opposition to defendants' motion for summary judgment and to dismiss; (2) an opposition to defendants' motion for attorney's fees; and (3) a motion for partial summary judgment dismissing defendants' affirmative defenses of personal jurisdiction and statute of frauds. On July 19, 2012, defendants filed a reply in further support of their motion for attorney's fees, as well as a reply in further support of their motion for summary judgment and dismissal and in opposition to plaintiff's cross-motion to dismiss affirmative defenses. Plaintiff filed a reply in further support of its motion for partial summary judgment on July 26, 2012. Oral argument was held on August 22, 2012. The Court has fully considered the submissions of the parties.

### II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to

---

[9] Because the Court has relied, at least in part, on deposition excerpts and other exhibits submitted by the parties in conjunction with their papers, the Court treats defendants' Motion For Summary Judgment and to Dismiss solely as a Motion for Summary Judgment. Accordingly, the standard for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), governs the Court's review of defendants' motion.

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions where jurisdictional issues are in dispute:

> If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought. If the defendant contests the plaintiff's factual allegations, then a hearing is required, at which the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence.

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citations omitted).

In the instant action, following discovery, defendants filed a motion for summary judgment regarding the issue of personal jurisdiction. For the reasons stated below, the Court concludes that the

undisputed facts demonstrate the absence of personal jurisdiction over defendants.[10]

## III. DISCUSSION

### A. Personal Jurisdiction

Defendants' primary argument for summary judgment is that the Court lacks personal jurisdiction over defendants and, accordingly, lacks authority to rule in this action. Defendants contend that there is no personal jurisdiction pursuant to either N.Y. C.P.L.R. § 301 or § 302. (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. and to Dismiss ("Defs.' Mot.") at 5-18.) Plaintiff, on the other hand, argues that defendants transacted business in New York by, *inter alia*, "contracting to supply samples to Plaintiff in New York" and "visiting New York to negotiate and conclude contracts with Plaintiff." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. and in Supp. of Pl.'s Cross Mot. for Summ. J. ("Pl.'s Opp'n and Cross Mot.") at 1.)

It is well settled that "[i]n diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (citation omitted). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Id.* Thus, the district court should engage in a two-part analysis in resolving personal jurisdiction issues: (1) whether New York law would confer jurisdiction by New York courts over defendants; and (2) whether the exercise of jurisdiction over defendants comports with the Due Process Clause of the Fourteenth Amendment. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *Blakeman v. Walt Disney Co.*, 613 F. Supp. 2d 288, 301 (E.D.N.Y. 2009). Here, because the Court concludes that plaintiff has failed to raise any fact in dispute that would indicate that the requirements of either New York's general jurisdiction or long arm statute had been met with respect to the defendants, no further discussion of whether such jurisdiction would satisfy due process is required. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) ("[A]s the New York Court of Appeals has made clear, the constitutional analysis is a distinct step from the statutory one; it is only once the long-arm statute is deemed satisfied that the court need examine whether due process is likewise comported with." (citing *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000))); *Ball*, 902 F.2d at 198 ("Because the District Court correctly held that neither statute sustains the assertion of jurisdiction over [defendant] in this case, it is not necessary to consider [defendant's] further contention that assertion of personal jurisdiction over it would violate the Due Process Clause of the Fourteenth Amendment.").

Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302. Here, plaintiff relies on both C.P.L.R. sections: plaintiff asserts (1) that the Court has general jurisdiction over defendants by virtue of, *inter alia*, defendants' visits to New York and Walker's alleged management of defendants

---

[10] The Court did not require a hearing for plaintiff to prove its facts by a preponderance of the evidence because that is a standard of proof appropriate for resolving disputed issues of fact and, here, the Court has determined that the undisputed facts demonstrate the absence of jurisdiction over defendants as a matter of law. *See Ball*, 902 F.2d at 197-98.

from New York, and (2) that the Court has long-arm jurisdiction over defendants by virtue of the fact that defendants traveled to New York and shipped leather samples to New York. In cases like this one, where a court is faced with cross-motions for summary judgment and the parties have already conducted discovery in regards to personal jurisdiction, the court must "determine if undisputed facts exist" to resolve the jurisdictional issue. *Ball*, 902 F.2d at 197-98 (explaining that district court "properly examined the record to determine if there were undisputed facts that could resolve the jurisdictional issue" when "the issue of jurisdiction was submitted by both sides on cross motions for summary judgment," rather than hold the plaintiff to a preponderance of the evidence standard, as "that is a standard of proof appropriate for resolving disputed issues of fact"). As set forth below, the Court concludes that the undisputed facts demonstrate that plaintiff's bases for personal jurisdiction cannot satisfy the requirements of either Section 301 or Section 302. Accordingly, the Court grants defendants' motion for summary judgment on the personal jurisdiction issue and denies plaintiff's cross-motion for summary judgment in its entirety.[11]

1.  Whether the Court has General Jurisdiction over Defendants Pursuant to N.Y. C.P.L.R. § 301

a.  Traditional "Doing Business" Jurisdiction

Under New York's general jurisdiction statute, N.Y. C.P.L.R. § 301, a New York court may exercise general jurisdiction over a non-domiciliary corporation that is "doing business" in New York. *Ball*, 902 F.2d at 198. The "doing business" standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). A corporation is "doing business" in New York "if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)); *see also Wiwa v. Roayl Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (explaining that a "plaintiff must show that a defendant engaged in 'continuous, permanent, and substantial activity in New York'" (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990))). This "doing business" inquiry is focused on the time the action was brought, rather than when the cause of action arose. *See, e.g.*, *William Sys. v. Total Freight Sys.*, 27 F. Supp. 2d 386, 388 (E.D.N.Y. 1998).

To determine whether a foreign corporation is doing business in New York, courts focus on a set of common factors, including the following: whether the company has an office in the state; whether it solicits business in the state; whether it has a phone listing in the state; whether it does public relations work in the state; and whether it has individuals permanently located in the state to promote its interests. *See Wiwa*, 226 F.3d at 98 (citations omitted); *see also Sound Around Inc. v. Audiobahn, Inc.*, No. 07 CV 773 (RJD)(CLP), 2008 WL 5093599, at *4

_____

[11] Because the Court concludes that it does not have personal jurisdiction over defendants, the Court need not reach the merits of plaintiff's claims and, instead, dismisses plaintiff's amended complaint.

(E.D.N.Y. Nov. 24, 2008). These factors do not amount to a formula for testing jurisdiction, but rather are meant to provide guidance to courts in analyzing the personal jurisdiction question. *See Wiwa*, 226 F.3d at 95 (explaining that a fact-specific inquiry is necessary to determine whether a corporation's contacts with New York demonstrate "continuous, permanent and substantial activity" (citing *Landoil Res. Corp.*, 918 F.2d at 1043)). Additionally, as the Second Circuit has noted, "[t]here is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 570 (2d Cir. 1996). Thus, "the issue of whether a defendant has such a systematic and continuous contact with New York as to be tantamount to presence within the state is a fact-sensitive determination requiring a balancing of all relevant factual circumstances." *Landoil Res. Corp.*, 918 F.2d at 1044.

Plaintiff concedes that defendants exhibit none of the traditional signs of an entity doing business in New York. Defendants have no offices, bank accounts, telephone listings, or mailing addresses in New York. (Defs.' 56.1 ¶ 7.) Defendants have also never been licensed to do business in New York, have never designated agents for service of process in New York, and have never paid taxes in New York. (*Id.*) Moreover, defendants have never owned real estate, assets, or personal property in New York. (*Id.*) Although defendants admit to occasionally shipping leather samples to New York, that activity does not rise to the level of "doing business" in New York. *See, e.g., Glacier Refrigeration Serv., Inc. v. Am. Transp., Inc.*, 467 F. Supp. 1104, 1106-07 (E.D.N.Y. 1979) (finding that "interstate delivery of small packages in certain States, including New York on an occasional basis"

was not enough to find that defendants were doing business with New York); *Potter's Photo. Applications Co. v. Ealing Corp.*, 292 F. Supp. 92 (E.D.N.Y. 1968) (finding that shipment of goods into New York pursuant to orders by New York customers was insufficient to create personal jurisdiction under Section 301). Similarly, defendants' limited visits to New York, namely to attend trade shows and observe emerging fashion trends, does not constitute "doing business" with New York for purposes of the general jurisdiction inquiry. *See, e.g., Dauman v. Hallmark Card*, 96 Civ. 3608 (JFK), 1998 U.S. Dist. LEXIS 1452, at *16 (S.D.N.Y. Feb. 9, 1998) ("[M]ere attendance at trade shows, even if on a regular basis, does not establish a basis for personal jurisdiction." (citing cases)). Accordingly, defendants exhibit none of the traditional indicia of a corporation "doing business" within New York sufficient to subject them to personal jurisdiction under C.P.L.R. § 301.

Despite the fact that the traditional "doing business" factors undisputedly do not apply, plaintiff maintains that the Court has jurisdiction over defendants pursuant to Section 301. Plaintiff's theory of general jurisdiction is largely premised on Walker and his alleged managerial role over defendants from New York. (*See* Pl.'s Opp'n and Cross Mot. at 7-14.) However, plaintiff's theory is unsupported by any evidence in the record and, moreover, is explicitly contradicted by the undisputed facts. It is uncontroverted that Walker is the Chairman of the Board of defendants' *parent* company. (Defs.' 56.1 ¶ 1.) He is not an employee, officer, or director of either of the defendants (*id.* ¶ 2), and does not participate in either of the defendants' board

meetings (*id.* ¶ 6).[12] He also does not manage any real estate interests on behalf of the defendants. (*Id.* ¶ 4; *see also* Walker Aff. ¶ 9.) Instead, Walker attends and participates in Board meetings of the parent company (*id.* ¶ 11), and is not involved in any of the day-to-day operations or management of defendants (Moore Dep. at 157). Walker, therefore, exerts the kind of oversight that is customary of a parent over the affairs of its subsidiaries.[13] Such behavior by an entire board, let alone one member of it, is not sufficient to otherwise confer jurisdiction on a subsidiary. *See, e.g.*, *Giar v. Centea*, 02 Civ. 7916 (LLS), 2003 U.S. Dist. LEXIS 6383, at *5 (S.D.N.Y. Apr. 16, 2003) (explaining that "normal business influence of a corporate parent" falls short of the "pervasive control over the subsidiary" that is required to establish that the subsidiary is a "mere department" of the corporate parent for purposes of personal jurisdiction inquiry (citation and internal quotation marks omitted)); *Saraceno v. S.C. Johnson & Son, Inc.*, 83 F.R.D. 65, 71 (S.D.N.Y. 1979) (explaining that "under New York law a parent of a multinational corporate enterprise may make broad policy decisions for its subsidiaries. Such control is inherent in the parent-subsidiary relationship and does not justify labeling a subsidiary a 'mere department' of the parent" for purposes of establishing personal jurisdiction over the subsidiary).[14] Plaintiff's allegations to the contrary are conclusory

---

[12] The Court notes that, even if Walker did participate in defendants' board meetings, the mere fact that a board member resides in New York is not enough to confer jurisdiction. *See, e.g.*, *Clarke v. Fonix Corp.*, 98 Civ. 6116 (RPP), 1999 U.S. Dist. LEXIS 2143, at *18-19 (S.D.N.Y. Mar. 1, 1999) ("[B]oard meetings held in New York, or the presence of a board member in New York, is not evidence of doing business here.").

[13] Accordingly, plaintiff's reliance on *Silver v. Countrywide Realty, Inc.*, 39 F.R.D. 596 (S.D.N.Y. 1966) is misplaced. (*See* Pl.'s Opp'n & Cross Mot. at 40-41.) In that case, the undisputed facts indicated that the foreign corporation at issue was being *managed* by two companies in New York, and that *numerous* individuals – the chief executive officers of the two New York companies, along with a majority of the board of directors and executive committee of the foreign corporation at issue – resided in and maintained their offices in New York. 39 F.R.D. at 599. Based on those facts, it was clear that "the affairs of [the foreign corporation at issue were] in large part *directed* and *managed* from New York, so that it [was] doing business and amenable to suit in New York." *Id.* That is simply not the case here.

[14] The Court notes that jurisdiction over a parent corporation does not automatically establish jurisdiction over a subsidiary. *See Keeton v. Hustler Magazine*, 465 U.S. 770, 802 n.13 (1984). To show that defendants are subject to jurisdiction in New York due to their corporate parent, plaintiff would have to successfully demonstrate that defendants are merely a department or agent of their New York-based parent corporation. *See, e.g.*, *Gundlach v. IBM*, No. 11-CV-846 (CS), 2012 U.S. Dist. LEXIS 60926, at *29-39 (S.D.N.Y. May 1, 2012). Plaintiff does not, nor could it, for the reasons discussed *supra*, credibly establish agency jurisdiction over defendants or that defendants operate as a mere department of Richina Pacific. Indeed, the only mention of such a theory in plaintiff's opposition papers is plaintiff's assertion that because, at his deposition, Moore stated that he "manag[es] a small division of Richina Pacific Limmited," defendants admitted that they were merely a "department" of their parent. (*See* Pl.'s Opp'n & Cross Mot. at 42-43.) This reasoning is strained at best, for the mere fact that one calls a subsidiary a "division," or even a "department," of a larger parent corporation does not make that subsidiary a "mere department" for purposes of the personal jurisdiction inquiry. Moreover, even assuming *arguendo* that plaintiff could demonstrate that defendants are merely a department or agent of their corporate parent, it is not clear, nor has plaintiff alleged, that Richina Pacific would even be considered New York based, as plaintiff has focused on the domicile of only a single member of the Richina Pacific Board, Walker. *See, e.g.*, *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 636 n.6 (S.D.N.Y. Oct. 7, 2008) (citing *Stutzman v. Rainbow Yacht Adventures Ltd.*, 3:06-CV-0300-K, 2007 U.S. Dist. LEXIS 8697 (N.D. Tex. Feb. 7, 2007) ("Neither the residency nor the citizenship of a controlling shareholder will establish personal jurisdiction over the company.")).

and, moreover, based on pure speculation. (*See, e.g.*, Pl.'s Opp'n and Cross Mot. at 13-14 (arguing that because there was an alleged merger between defendants and an American company in 2008, "it's a fair inference that Defendants would have turned to Walker, an expert in [U.S.] corporate and securities law, for [] advice").) Plaintiff's focus on Walker is therefore misplaced, as his Board efforts and business dealings for the parent are insufficient to demonstrate that this Court has personal jurisdiction over defendants pursuant to Section 301.

### b. Jurisdiction Under the "Solicitation Plus" Rule

To the extent plaintiff relies on the "solicitation plus" theory of "doing business" as a last resort for establishing personal jurisdiction under Section 301, that approach similarly fails. Under the "solicitation-plus" rule articulated by the Second Circuit, personal jurisdiction may properly be found if (1) the solicitation is substantial and continuous, and (2) defendant engages in other activities of substance in the state. *Landoil Res. Corp.*, 918 F.2d at 1043. The Second Circuit has cautioned, however, that the "solicitation-plus" rule "is not a talismanic test for jurisdiction, but merely a means by which courts have attempted to resolve" the fact-sensitive personal jurisdiction determination. *Id.* at 1044. The "solicitation plus" theory of "doing business" is not a winning one for plaintiff, as the uncontroverted evidence shows that defendants did not substantially solicit business in New York and, moreover, did not engage in any other substantive business activities within the state.

Because the Second Circuit has indicated that, under the "solicitation-plus" rule, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business,'" *Id.* at 1044 (quoting *Aquascutum of London, Inc. v. S.S. Am. Champion*, 426 F.2d 205, 211 (2d Cir. 1970)) (internal quotation marks omitted), the preliminary inquiry here must focus on the nature and degree of defendants' solicitation efforts in New York. In determining whether a foreign corporation's solicitation is substantial, courts often look to the percentage that foreign corporation's revenue that is attributable to New York. *See, e.g.*, *Overseas Media, Inc. v. Skvortsov*, 406 F. Supp. 2d 563, 569 (S.D.N.Y. 2006). "In so doing, courts have generally found that a foreign corporation is not present in New York where the corporation derives less than 5% of its overall revenue from New York customers." *Yanouskiy v. Eldorado Logistics Sys.*, 1:05-cv-2202-ENV-JMA, 2006 U.S. Dist. LEXIS 76604, at *14-15 (E.D.N.Y. Oct. 20, 2006) (citing cases). Of particular note in this case is the fact that defendants do not ship commercial goods directly to New York – they sell their leather to factories in Asia and those factories then create products for sale in the United States and elsewhere. (Defs.' 56.1 ¶ 8.) Moreover, the revenue defendants received from the products that those factories ultimately sold to companies with operations in New York accounted for less than 5% of defendants' total revenues per year from 2008 to 2010 (*id.* ¶ 14), and, accordingly, does not constitute substantial solicitation in New York. *See, e.g.*, *Yanouskiy*, 2006 U.S. Dist. LEXIS 76604, at *17 (finding solicitation was not substantial when New York sales represented less than 5% of defendant's overall sales); *Bank of Taiwan v. Ulti-Med Int'l*, 95 Civ. 5657 (JFK), 1996 U.S. Dist LEXIS 12857, at *6 (S.D.N.Y. Sept. 4, 1996) (same when 2.8% of total sales were

to New York companies).[15] Similarly unavailing is plaintiff's reliance on occasional trips to New York taken by executives and/or employees of defendants for alleged business purposes.[16] Those "sporadic visits" must be "considered not in isolation, but against the background of multi-national entities doing a much larger business of which these [interactions and potential transactions]' were but a small part." *Landoil Res. Corp.*, 918 F.2d at 1046 (explaining that "sporadic visits [to New York] when taken in connection with the defendant's conduct in placing insurance business in New York or New York insurance business in London" does not support claim of personal jurisdiction over defendant). In the context of the multi-national leather business defendants are a part of, those few trips to New York evidenced in the record do not support plaintiff's claim that there is personal jurisdiction over defendants. Thus, the uncontroverted evidence indicates that

[15] As discussed *supra*, defendants admit that they have sent samples of leather to New York, but that was done on a sporadic and infrequent basis, and the dollar amount of any such sample sent was *de minimis* (under $200). (*see* Moore. Decl. ¶ 8.) Thus, even if that revenue was considered, although it is not clear that it should be, the Court's analysis would not be affected.

[16] The parties disagree about the number of trips to New York that were taken by executives and/or employees of defendants on an annual basis. However, the Court need not resolve that dispute, for even if plaintiff's higher number of 39 visits (*see* Pl.'s Opp'n & Cross. Mot. at 14-15), is accepted (although it is likely, based on the other evidence in the record, that this number is significantly overstated), those trips, when considered in the context of the sum total of defendants' business, are not substantial and continuous enough to confer personal jurisdiction. Moreover, as discussed *supra*, most of those trips were to attend trade shows or ascertain fashion trends and, accordingly, are not the types of trips that amount to "doing business" for purposes of ascertaining whether personal jurisdiction exists.

defendants' contacts with New York are "insufficient to establish the systematic and continuous presence within the state that New York law requires." *Landoil Res. Corp.*, 918 F.2d at 1045.

Even assuming *arguendo* that defendants' solicitation efforts in New York could be deemed substantial and continuous, jurisdiction under the "solicitation plus" theory would fail because plaintiff has not shown that defendants are engaged in any other activities of substance within the state. "'[T]he additional activities sufficient to confer jurisdiction under the solicitation plus doctrine have involved either some financial or commercial dealings in New York . . . or the defendant holding himself out as operating in New York, either personally or through an agent.'" *Biro v. Condé Nast*, 11 Civ. 4442 (JPO), 2012 U.S. Dist. LEXIS 113188, at *16 (S.D.N.Y. Aug. 10, 2012) (alteration in original) (quoting *Cicalo v. Harrah's Operating Co., Inc.*, 06 Civ. 221 (PKL), 2008 U.S. Dist. LEXIS 33806, at *11-12 (S.D.N.Y. Apr. 24, 2008)). As discussed *supra*, defendants do not have direct financial dealings with New York and their more indirect financial dealings with the state produce a *de minimis* degree of revenue, as compared to their total revenue generated. Additionally, defendants' commercial dealings in New York consist, in large part, of attending trade shows and ascertaining fashion trends. Finally, Walker's New York activities are typical of those carried out by a parent corporation and, therefore, have no bearing on the personal jurisdiction question as it relates to defendants. There is simply no evidence in the record indicating that defendants are engaged in other activities of substance within New York to support a finding of personal jurisdiction in the event that defendants were deemed to be engaged in

substantial and continuous solicitation in the state.

\*\*\*

In sum, the uncontroverted evidence in the record demonstrates that, either under the traditional "doing business" test or the "solicitation plus" test, this Court lacks personal jurisdiction over defendants pursuant to New York's general jurisdiction statute, N.Y. C.P.L.R. § 301.

2. Whether the Court has Long-Arm Jurisdiction over Defendants Pursuant to N.Y. C.P.L.R. § 302

a. Legal Standard

Under N.Y. C.P.L.R. § 302(a),

a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a); *see also Overseas Media, Inc. v. Skvortsov*, 277 F. App'x 92, 95 (2d Cir. 2008).

To establish personal jurisdiction under Section 302(a)(1), the only portion of the Section that is relevant to the personal jurisdiction inquiry in this particular case, "two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from *that* business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (emphasis added) (citing *McGowan v. Smith*, 52 N.Y.2d 268 (1981)). The statute allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13, 18 (1970)).

Several factors should be considered in determining whether an out-of-state defendant transacts business in New York in such a way that it constitutes purposeful activity so as to satisfy the first step of the test, including:

(i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what

14

the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). Additionally, courts have considered whether the contract was executed in New York. *See Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 480 (2d Cir. 2008). None of these factors is dispositive; "the ultimate determination is based on the totality of circumstances. *Sunward Elecs., Inc.*, 362 F.3d at 22; *cf. Berkshire Capital Grp.*, 307 F. App'x at 480 ("Indeed, both this Court and the New York Court of Appeals have held that the execution of a contract in New York, by itself, is inadequate to sustain jurisdiction." (citations omitted)). "As for the second part of the test, a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation and internal quotation marks omitted). "'A connection that is 'merely coincidental' is insufficient to support jurisdiction.'" *Id.* at 249 (quoting *Sole Resort, S.A. de C.V.*, 450 F.3d at 103).

### b. Analysis

#### i. "Transacting Business" Within New York

In terms of whether defendants transacted to do business in New York so as to satisfy the first step of the test for jurisdiction under Section 302, the following

facts are instructive. As a preliminary matter, the written contract regarding the sale and shipment of leather was executed by the parties in Shanghai, not New York. (McDonald Aff. Ex. E; McDonald Aff. Ex. J.) Additionally, defendants cannot be said to have contracted to supply goods within New York, as the agreement at issue required defendants to ship leather to Tianjin, China. (Defs.' 56.1 ¶ 9); *see, e.g.*, *Seldon v. Magedson*, 11 Civ. 6218 (PAC)(MHD), 2012 U.S. Dist. LEXIS 141616, at *50 (S.D.N.Y. July 10, 2012) ("[I]n the context of contract claims, in determining jurisdiction, the place of performance is more critical than the place of the execution of a contract." (alterations, citation, and internal quotation marks omitted)); *Mortg. Funding Corp. v. Boyer Lake Pointe, LC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (explaining that New York courts often consider, as a relevant factor, whether the contract was meant to be performed in New York). Further, "the mere fact that [defendants] negotiated an agreement to pay a New York corporation," plaintiff, for goods shipped to China is "alone insufficient to establish that [these defendants] transacted business within New York." *Modern Indus. Firebrick Corp. v. Shenango Inc.*, 11-CV-959, 2012 U.S. Dist. LEXIS 87875, at 10 (W.D.N.Y. June 25, 2012).

In this case, the agreement between plaintiff and defendants was clearly focused on Asia, not New York, and defendants did not otherwise "project" themselves into New York so as to "engage in a sustained and substantial transaction of business." *Berkshire Capital Grp.*, 307 F. App'x at 481 ("[P]hysical presence in New York is not a prerequisite for jurisdiction so long as the defendant on his or her own initiative projects himself or herself into this state to engage in a sustained and substantial

transaction of business." (citation and internal quotation marks omitted)). Moore traveled to New York on behalf of defendants for the purpose of attending trade shows and/or ascertaining fashion trends, not to transact business. (*See* Pl.'s 56.1 ¶ 11); *see, e.g.*, *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981) (finding that the "bare fact that third-party defendant [] had some 'purposeful' business contact with the State through its efforts to conduct general marketing research within its borders" was insufficient to confer jurisdiction). As plaintiff indicates, other representatives of defendants traveled to New York on occasion to attend board meetings or to meet with Walker, but not to transact business. (*See* Pl.'s Opp'n and Cross Mot. at 15.) Finally, although the parties dispute whether or not representatives of defendants met with plaintiff in New York to negotiate quantity and price terms on an annual basis, even if plaintiff's version of the facts is accepted as true, representatives of defendants would have met with plaintiff in New York, at most, once a year to merely modify already existing contract provisions. (*See* Sultan Aff. ¶ 4 (referencing one New York visit per each year of a five year span to discuss price and volume terms).) Such limited visits (both limited in frequency and in substance) – even if they did result in modifications of contract terms – would not, standing alone, equate to transacting business in New York. *See, e.g.*, *Seldon*, 2012 U.S. Dist. LEXIS 141616, at *45-46 ("[W]hen a contract is to be performed entirely outside of New York, the fact that the defendant engaged in *some* contact with a New York purchaser does not necessarily mean that the defendant transacted business in New York under section 302(a)(1)." (emphasis added) (citing *Berkshire Capital Grp.*, 307 F. App'x at 481)); *Painewebber, Inc. v. Westgate Grp., Inc.*, 748 F. Supp.

115, 120 (S.D.N.Y. 1990) ("In-state execution of a minor contractual provision . . . does not rise to 'transacting business' under C.P.L.R. § 302(a)(1)."); *Presidential Realty Corp. v. Michael Square West, Ltd.*, 44 N.Y.2d 672 (1978) (holding that where material terms of contract were negotiated outside of New York, the fact that a "modification letter and [] agreement were signed in New York" did not, without any other proof of contact with the state, confer jurisdiction).[17] Thus, the undisputed evidence clearly indicates that defendants' travel to or contact with New York did not rise to the level of transacting to do business within the state in the face of an otherwise out-of-state executed and performed upon contract.

The other factors courts commonly consider in evaluating the first prong of the Section 302(a)(1) analysis do not serve to help plaintiff. There is no choice-of-law clause in the contract between the parties (*see* McDonald Ex. E), so that factor is neutral, at best. Also, the contract does not require defendants to send notices or payments into New York; the contract requires plaintiff to send funds through "The Hongkong and Shanghai Banking corporation Ltd, Hongkong." (*Id.*) Finally, although the parties maintained a business relationship from 2003 or 2004 through 2008 (*see* Defs.' Resp. to Pl.'s 56.1 ¶ 4), and, therefore, could be said to have maintained an "on-going contractual

---

[17] The Second Circuit has explained that "it is the quality of the defendants' New York contacts that is the primary consideration," and that "[a] single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1)." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) (citations and internal quotation marks omitted). The Court, having considered both the quality and quantity of defendants' contacts, concludes that this is not one of those cases.

relationship," "a single set of agreements" between a New York corporation and out-of-state defendants "is, without more, insufficient to confer jurisdiction if the contract's 'center of gravity' is not in New York." *Seldon*, 2012 U.S. Dist. LEXIS 141616, at *48. This factor, therefore, does not outweigh all the other facts that overwhelmingly balance in favor of finding that defendants do not transact business in New York.[18] The uncontroverted evidence, therefore, demonstrates that defendants did not engage in any purposeful activity to avail itself of the laws of New York.

### ii. "Articulable Nexus" or "Substantial Relationship"

Even had defendants been transacting business in New York, plaintiff cannot demonstrate that there is "some articulable nexus" or any "substantial relationship" between defendants' New York activities and the cause of action sued upon and, accordingly, cannot satisfy the second prong of the Section 302 jurisdiction test. *See Best Van Lines, Inc.*, 490 F.3d at 249. Plaintiff's breach of contract claim is based on defendants' alleged breach of three elements of the agreement between the parties: (1) the quality term (the allegation being that defendants failed to send leather of the quality that plaintiff contracted for); (2) the delivery term (the allegation being that defendants' shipment of leather was 30 to 180 days late); and (3) the credit term (the allegation being that defendants unilaterally and arbitrarily reduced plaintiff's credit terms in violation of the contract). (Am. Compl. ¶¶ 8-18.) As discussed *supra*, plaintiff maintains that representatives of defendants visited plaintiff on an annual basis to re-negotiate monthly price and volume terms. Plaintiff's breach of contract claim, however, is not premised on any alleged breach of price or volume but, rather, relates to quality, delivery, and credit – all terms that plaintiff does not even claim, nor does the evidence indicate, were discussed at these annual New York meetings. Thus, even if plaintiff's version of events is accepted, there is simply no "articulable nexus" between the New York meetings plaintiff cites and its breach of contract claim.[19,20]

---

[18] The Court recognizes that the first prong of the Section 302(a)(1) test can be satisfied by showing that defendants either transact business within New York *or* contract anywhere to supply goods or services in the state. However, the uncontroverted evidence also indicates that defendants did not contract to supply goods or services in the state, as they agreed to send the leather goods to China. (*See* Defs.' 56.1 ¶ 9.) Plaintiff's argument that the fact that defendants shipped leather samples on occasion to New York should have any bearing on this analysis is without merit, as those samples are not the goods at issue in this case. *See, e.g.*, *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 210 (E.D.N.Y. 2006) (finding that plaintiff failed to establish that the dispute involved goods delivered to New York when the goods at issue were delivered to other states and mere samples of those goods were sent to New York).

[19] Similarly, plaintiff cannot contend that Moore's trips to New York for purposes of attending trade shows or ascertaining fashion trends or other trips taken by representatives of defendants to New York to meet with Walker or attend board meetings bear any "substantial relationship" to this breach of contract claim.

[20] Having determined that plaintiff cannot satisfy the second prong of the Section 302(a)(1) test, even assuming *arguendo* that it could meet the first prong, with respect to the breach of contract claim, the Court need not also conduct the inquiry with respect to plaintiff's fraud claim. *See SAS Grp., Inc. v. Worldwide Inventions, Inc.*, 245 F. Supp. 2d 543, 548 (S.D.N.Y. 2003) ("[A] plaintiff . . . must secure personal jurisdiction over a defendant with respect to each claim [he or] she asserts." (alteration in original) (citation and quotation marks omitted)). In fact, plaintiff does not separately argue for personal jurisdiction on the fraud claim. In any event, the

Similarly unavailing is plaintiff's argument that defendants' shipping of leather samples to New York bears a "substantial relationship" to its breach of contract claim. As a preliminary matter, it is not even clear that defendants' shipments of leather samples to plaintiff were governed by a contract. However, even if they were, that particular contract is not at issue in this case. The contract that defendants allegedly breached did not govern the samples that were shipped to New York; the contract at issue in this case relates to defendants' agreement with plaintiff to ship leather to a factory in China. (Defs.' 56.1 ¶ 9.) Said another way, the contract upon which plaintiff's breach of contract claim is based governs the leather that was shipped to China, and not to the mere samples that were on occasion sent to New York. Accordingly, there is no "articulable nexus" between defendants' sending of samples to New York and plaintiff's breach of contract claim for purposes of establishing personal jurisdiction over defendants pursuant to Section 302(a)(1). *See, e.g.*, *Wickers Sportswear, Inc.*, 411 F. Supp. 2d at 211 (rejecting plaintiff's argument that personal jurisdiction under Section 302(a)(1) could be based on defendant's shipment of fabric samples to New York when the breach at issue in the case related to the fabrics, and not the samples, that were sent to states other than New York). Plaintiff's contention that the "samples supplied a term of the parties' agreement – i.e., what the leather would look like" (*see* Pl.'s Opp'n and Cross Mot. at 27), does not save its argument, as the "samples were for quality control purposes, but have nothing to do with the core of this dispute, which involved the finished [] products that were shipped to [a]

location[] [other than] New York." *Wickers Sportswear*, 411 F. Supp. 2d at 211.

***

In sum, the uncontroverted evidence demonstrates that defendants did not engage in any purposeful activity to avail itself of the laws of New York. Even if they had, however, it is clear that the claims in this lawsuit do not arise from any such activity. Accordingly, the Court does not have personal jurisdiction over defendants pursuant to N.Y. C.P.L.R. § 302.

## B. Defendants' Motion for Expenses

Also before the Court is defendants' motion, made pursuant to Rule 37 of the Federal Rules of Civil Procedure, to recover from plaintiff and plaintiff's counsel, jointly and severally, expenses incurred in connection with various discovery motions on which defendants prevailed.

A brief summary of the events of discovery that relate to defendants' motion is as follows. On February 9, 2011, plaintiff moved to compel discovery, asserting that Walker managed defendants from New York. On February 23, 2011, defendants cross-moved for a protective order and submitted an affidavit from Walker stating that he had no role in managing defendants and no knowledge of the underlying facts of this case. On April 25, 2011, Magistrate Judge Boyle denied plaintiff's motion to compel and granted defendants' motion for a protective order. In so doing, Magistrate Judge Boyle cautioned plaintiff not to renew its subpoena just for the sake of renewing it, and told plaintiff that he would grant leave to renew if something were to come up later on in discovery that warranted a change in position with regard to Walker. (Apr. 25, 2011 Tr. at 18-19.) Despite these

---

Court's analysis would be the same with respect to the fraud claim under the facts of this case.

instructions, plaintiff filed a virtually identical subpoena ten days later, on May 5, 2011. (*See* Defs.' Mot. for Protective Order, ECF. No. 66, Ex. C, Email from Pl.'s attorney forwarding Walker subpoena.) Defendants filed another motion for a protective order, which was also granted by Magistrate Judge Boyle on May 17, 2011. Plaintiff subsequently filed separate objections to Magistrate Judge Boyle's April 25, 2011 and May 17, 2011 rulings. On October 19, 2011, this Court overruled plaintiff's objections and affirmed Magistrate Judge Boyle's rulings for the reasons stated by Judge Boyle and by this Court orally on the record.[21]

Defendants' request for expenses, pursuant to Rule 37, relates predominately to two aspects of plaintiff's conduct during discovery: (1) the fact that plaintiff allegedly rejected an offer to depose Walker and, instead, moved to compel discovery on the unsupported theory that Walker managed defendants from New York (for this, defendants seek expenses incurred in responding to plaintiff's motion to compel and moving for a protective order), and (2) the fact that plaintiff's counsel served a virtually identical subpoena only ten days after Magistrate Judge Boyle warned him against taking such immediate action (for this, defendants seek expenses incurred in filing a second protective order).[22] For the

---

[21] The Court carefully reviewed Judge Boyle's rulings and the papers upon which both rulings were based. In affirming both rulings, the Court explained, on the record, that based upon its review, it "[did not] believe that there was a sufficient showing [made] with respect to Mr. Pu's motion to compel additional discovery as related to Mr. Walker." (Oct. 19, 2011 Tr. at 4.) The Court further explained that it did not believe that additional discovery related to Walker "was necessary with respect to the issues being litigated in this case." (*Id.*) Accordingly, the Court concluded "that it was proper for the reasons stated by Judge Boyle to issue a protective order with respect to the subpoena of Mr. Walker and that there's no basis to overturn that decision." (*Id.* at 5.) The basis for that oral decision affirming Magistrate Judge Boyle's rulings was that plaintiff was seeking extensive and unwarranted discovery from a non-executive chairman of the Bermuda parent corporation that was four steps removed from the Chinese defendants. Moreover, plaintiff rejected an offer to depose Walker, and defendants submitted an affidavit from Walker which stated, among other things, that he had no role in managing the defendants and no knowledge of the facts of the case. Under these circumstances, the Court believed that the additional discovery sought was simply a fishing expedition that had no possibility of uncovering relevant information on the personal jurisdiction issue. However, in an abundance of caution, the Court advised plaintiff's counsel, at the time of the oral ruling affirming the Magistrate Judge's rulings, that he could renew his application for additional

discovery regarding Walker if he uncovered any facts during the remainder of discovery suggesting that such additional discovery regarding Walker was warranted. During an oral ruling on February 2, 2012, with respect to certain issues that arose in connection with Moore's deposition, the Court re-visited this issue again and noted that it had reviewed the deposition transcript of Moore and that plaintiff's counsel had been given an extensive opportunity to depose Moore regarding contacts with Walker and any involvement by Walker with the defendants, and that such inquiry, as well as the other discovery in the case, was more than sufficient discovery on this issue. (*See, e.g.,* Moore Dep. at 146-158, 194-241 (attached as Exhibit A to Defendants' Letter dated Nov. 2, 2011).) In a letter dated February 3, 2012, plaintiff's counsel again renewed his request for additional discovery regarding Walker and, in an oral ruling on February 27, 2012, the Court again concluded that plaintiff had been provided with sufficient discovery, including the deposition of Moore, on this issue because plaintiff had been given a full opportunity in the jurisdictional discovery to explore all relevant issues in order to respond to defendants' personal jurisdiction argument.

[22] Defendants also seek expenses incurred in responding to plaintiff's attempts to pursue its motion to compel and its opposition by appealing Magistrate Judge Boyle's rulings. (*See* Defs.' Rule 37 Mot. at 4.) However, the expenses sought for those efforts are minor, as compared to the expenses sought for the other efforts more heavily focused on in the motion, and, in any event, plaintiff's appeals are not

reasons set forth below, defendants' Rule 37 motion is denied with respect to both categories of conduct.

Pursuant to Federal Rule of Civil Procedure 37, if a motion to compel is denied, a court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, a court "must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* A motion to compel may be deemed "substantially justified" so long as "'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (explaining that the appropriate connotation for "substantially justified" is "justified to a degree that could satisfy a reasonable person" (citation and quotation marks omitted)); *see also Bowne of N.Y.C. v. AmBase Corp.*, 161 F.R.D. 258, 262 (S.D.N.Y. 2005) (explaining that the "substantial justification" standard "holds the opposing party to an objective test of reasonableness and does not require that he acted in good faith" (citing *Pierce*, 487 U.S. at 565)).

The Court first notes that the discovery matters at issue occurred during a period of limited discovery – a period of discovery related to the question of whether the Court has personal jurisdiction over defendants. At that juncture, it was reasonable for plaintiff to pursue all avenues and theories of potential personal jurisdiction over defendants. Thus, although plaintiff allegedly turned down an offer to depose Walker, his request for documents responsive to the question of whether Walker managed defendants from New York (such that the corporate parent's activities would subject defendants to personal jurisdiction in New York) was not necessarily inappropriate at that stage of the litigation. In other words, although his motion was rejected by this Court and Magistrate Judge Boyle, this Court concludes that reasonable people could differ as to whether it was appropriate for plaintiff to seek the additional discovery. The Court, therefore, declines to award defendants the expenses sought in connection with their response to plaintiff's original motion to compel and their cross-motion for a protective order.

As for plaintiff's serving of the May 5, 2011 subpoena, plaintiff's counsel attempts to provide an explanation for his decision to re-serve the subpoena notwithstanding Judge Boyles ruling. Plaintiff's counsel notes that, when Magistrate Judge Boyle ruled on plaintiff's initial motion to compel, he indicated that the subpoena would be "null and void in any event" because it listed no issuing court. (Apr. 25, 2011 Tr. at 149.) As such, plaintiff argues that "in believing that [this] facial defect in the First Subpoena was a principle basis for [Magistrate Judge Boyle's] ruling," his "serving of an amended subpoena was substantially justified." (Pl.'s Opp'n to Defs.' Rule 37 Mot. at 22.) Plaintiff's counsel also argues, along the same lines, that Magistrate Judge Boyle did not have jurisdiction over his efforts to re-serve a subpoena in the Southern District of New York.

---

sanctionable for the same reasons that its other at issue discovery-related activities are not sanctionable, as discussed *supra*.

Whatever confusion plaintiff's counsel may have had about Magistrate Judge Boyle's ruling and/or his jurisdiction, his decision to re-serve that subpoena, although ill-advised, is not a basis to award expenses to defendants in connection with their efforts to have that subpoena nullified.[23] In particular, defendants never actually made a motion with respect to the second subpoena; rather, defendants simply wrote a letter in which they informally requested that Judge Boyle issue an Order "re-confirming" the scope of his ruling and requiring counsel for plaintiff to seek the Court's permission before issuing any further discovery requests regarding Walker. In fact, it is clear that the letter was not a formal motion because defendants' counsel notes in the letter itself that they were proceeding informally, rather than by motion, to avoid having to seek sanctions in the form of legal fees (which they are now, in any event, doing). (*See* Defs.' Letter dated May 9, 2011, at 2 ("[R]ather than make yet another motion and run up additional legal fees (for which we would seek sanctions), we simply ask the Court to re-affirm that the protective order that the Court granted on April 25, 2011 applied to the Walker subpoena that was before the Court at that time."); *see also* Defs.' Letter dated May 10, 2011, at 2 ("Finally, in my letter of May 9, 2011, we said we were writing to the Court in order to avoid having to make a formal motion about Mr. Pu's behavior in re-serving a subpoena as to which a protective order had already

been granted, and which the Court had expressly instructed Mr. Pu not to do. If we have to make such a motion, we will definitely seek attorneys' fees under F.R.C.P. 37.").) Defendants never had to make a formal motion because, following receipt of their letters, Judge Boyle quickly granted the request on May 17, 2011.

Thus, based upon this record, the Court does not believe that the May 9, 2011 and May 10, 2011 letters constitute a "motion" that triggers Rule 37(a)(5); in fact, as noted above, defendants' counsel explicitly states that those letters were not a motion. In any event, even if those letters could qualify as a motion, the Court believes that awarding expenses would be unjust in these circumstances under Rule 37(a)(5) because defendants are seeking to recover under the Rule even though they successfully argued to Magistrate Judge Boyle that he should resolve the issue informally by clarifying his previous Order, so that they would not seek such expenses under Rule 37 by making a formal motion. In other words, defendants' position now – in seeking expenses for those letters – is completely inconsistent with their position taken before Magistrate Judge Boyle. The Court, therefore, also declines to award defendants expenses incurred in connection with moving by letter for a protective order against the second subpoena.

For these reasons, the Court declines to award expenses to defendants, against either or both plaintiff and its counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment on the question of whether the

---

[23] The Court also denied a motion for sanctions related to this conduct during a hearing. (*See* Oct. 19, 2011 Tr. at 5-6 ("With respect to defendant's [sic] request for sanctions, the court denies that. . . . There was that reference by the [Magistrate] judge that at least creates some ambiguity about his ability to try to – he said don't just do it for the sake of renewing the application. So I don't believe the fact that he sought to do that was somehow sanctionable conduct in light of the court's ruling . . . .").)

Court has personal jurisdiction over defendants, denies plaintiff's cross motion for summary judgment in its entirety, and dismisses the amended complaint for lack of personal jurisdiction. The Court also declines to award defendants' expenses and fees pursuant to Rule 37 of the Federal Rules of Civil Procedure. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2013
        Central Islip, NY

* * *

Plaintiff is represented by Richard Pu, 120 E. 90th Street, 10C, New York, N.Y. 10128. Defendants are represented by K. Ann McDonald and Jayne S. Robinson of Robinson McDonald & Canna LLP, 61 Broadway, Suite 1415, New York, N.Y. 10006.